repellent YORAM TALASAZAN. Leslie A. Cohen, counsel for Appley, Mohir Musigi, Hanrit Musigi, Mohir and Hanrit Musigi, DBA Roltex. Okay, Mr. Aver, nice to see you again. Thank you, Your Honor. You haven't aged a bit. Would you like to reserve some time on this for rebuttal? Yes, I would, Your Honor. I would say probably five minutes, please. Okay, thank you so much. Thank you, Your Honor. May it please the court. This is a case where I liken it to a building. In order for a building to be strong, it needs a strong foundation. And in this particular case, the foundation that everyone is looking at is a statement of decision that was issued by the state court. And I believe that that statement of decision is suspect. And it's suspect for a number of reasons. There was no trial transcripts. All of the intentional tort claims were adjudicated in favor of the appellant. And one of the primary witnesses has admitted providing false testimony during the state court trial. We've raised six issues on appeal. Primarily, I want to address four of those issues. Did the bankruptcy court err in determining that the appellant's debt was non-destructible for defalcation? Did the court err in determining that issue preclusion was defalcation claim? Did the appellants meet their burden of establishing a culpable state of mind? And did the bankruptcy court err in concluding that damages of $779,841 were approximately caused by the alleged defalcation? If the answer to any of these questions is yes, then the bankruptcy court's decision should either be reversed or at a minimum remanded. I'll start with the did the court err in determining that appellant's debt was non-destructible for defalcation while acting in a fiduciary capacity. And as the court is well aware, in Bullock, the Supreme Court said defalcation requires a culpable state of mind involving knowledge or gross negligence. Where the defendant offers no justification for its culpable state of mind, the courts following Bullock have concluded that it meets the Bullock's test. Conversely, where breach of fiduciary duty done on good faith but mistaken belief that the actions were not in breach, it has not been found to be a culpable state of mind. In this case, the bankruptcy court failed to properly consider appellant's explanation as to his state of mind. And we, in our briefs, went through and I commend to the court the trial transcripts and the citations of the trial transcripts where the appellant testified about the issuance of the of the 544 pieces. He testified about the alleged statement that the merchandise would be sold under the name Roltex. He testified about Mr. Musugi's access to the warehouse and the payments of the overhead. Relying on the statement of decision, the bankruptcy court discounted or did not even consider Mr. Telassa's own statements and testimony. There was cross-examination during the trial and so the appellee had a decided not to call Mr. Musugi as a witness. And so the only testimony that you have on this point that's in the record is from Mr. Telassa's trial testimony on day four. And again, I'd ask that the court go back and take a look at that. The conclusion is that the state court's findings seen through the explanations testified to appellant demonstrate that his actions were done in good faith and that they do not meet the culpable state of mind test of Bullock. Counsel, can I just interrupt you for a second? So what you're suggesting is that the bankruptcy court had the right to rely on the evidence that was presented at the hearing in addition to whatever findings, actual findings necessary to the underlying judgment in the state court that were part of the statement of decision. And if she ruled that she was basing her decision on the evidence that was presented, then the issue would become one for us of whether the decision that she made was clearly erroneous. So I would answer that in two parts. I would say that with regard to the statement of decision and the next point, you know, that we talk about issue preclusion, I would say that given the suspect nature of the statement of decision, given the lack of trial transcripts, given the conclusions that were reached by the state court and ruling that none of the intentional tort claims, ruling in favor of the appellant on all of the intentional tort claims, that the weight should have been, if you don't disregard the statement of decision, then the weight should really be with regard to the testimony of the debtor at the trial in the bankruptcy court to determine what his state of mind was. They're really... So counsel, just break that up into two pieces. And number one is that clearly you relied on the statement of decision and moving for summary judgment and ask the court to allow it and to rely upon it. So I have a little trouble. Can you explain why it works for you, but it doesn't work against you? Well, with regard to the fraud claim, and that was the claim that the trial judge ruled in the appellant's favor on summary judgment, there's a fundamental, there's a lot of differences, but a key among the differences is that the state court ruled in favor of the appellant on the fraud cause of action. That's number one. More importantly, and number two, the defalcation issue wasn't even before the state court. And that's one of the foundational bases for our claim that it can't be relied on with regard to the 523A4 claim. It can't be relied upon with regard, your position is with regard to a finding that he committed fraud and fraud would be the basis for defalcation, but it clearly could be relied upon for the other two elements, which is that there was an express trust and that he was a fiduciary under the circumstances. I don't think that we have argued at any point in the case that those two elements do not exist. And those are not the elements that we... The only element you're raising is the reliance on the statement of decision to the extent it helps support the concept that he had some state of mind that would breach the fiduciary duty requirements. Well, getting to the issue, preclusion issue, there's three things. The issue of defalcation was not decided in the state court. The federal elements of defalcation were not actually litigated in the state court. And whether appellant's conduct amounted to defalcation was not decided in the state court. So for those reasons, we question and object to the courts essentially precluding the appellant's testimony before the bankruptcy court in explaining his conduct in an effort to demonstrate or to prove the defendant's state of mind. The question for us is we can't, if I'm getting this correctly, we can't rely on the statement of decision because it didn't address specifically the issue that you suggest had to be determined if the court was going to rely upon the state court decision. It had to be determined and it wasn't necessary to the determinations that it made. But certainly all the evidence that he presented, all the evidence that was presented at trial, the trial court could assess and weigh and determine whether any of that evidence supported her conclusion, the bankruptcy court's ultimate conclusion. And our review of that would be on the clearly erroneous standard. Was there evidence to support her decision or was there a complete lack of evidence such that it would be clearly erroneous? The only quote unquote evidence to support her decision vis-a-vis a state of mind, culpable state of mind, is the pieces that the court took from the statement of decision, kind of taking not the whole thing, but just the pieces. But let's ignore what she took from the statement of decision. Let's look at the fact that there records were kept. There was testimony of Mr. Palisades, or however you pronounce his last name, and I apologize if I'm mispronouncing it, about what he suggested he did, what his purposes were, how he accounted for, how he kept records, what he thought the circumstances were. There was undisputed evidence of their agreement and arrangement that he understood what his still part of the record that doesn't rely on the statement of decision, doesn't it? Fair enough. Fair enough. But the point that I'm trying to make is that with regard to, for example, the issuance of the checks that had insufficient funds, he testified that he was pressured into issuing the checks, that he went to the appellee and told him to hold the checks until they could be covered, but the appellee wouldn't listen. At the time the checks were issued, the appellant intended there would be sufficient funds in the future to cover the checks from the large amount of unsold inventory. When the appellant put a stop payment on some of the checks, he explained why. But counsel, can I just let everybody know, we're closing in on three minutes here, so you're within your five, so I don't want to interrupt Judge Gannon and Mr. No, if you'd like to reserve, I don't want to take all your time. I would like to reserve, but if the court has other pertinent questions, I'm happy to try it. The only thing I wanted to raise was credibility was at issue here. And so despite the fact that you say he said all of these things, the trial court didn't find him credible, and can't we use that as also a piece of this overall consideration of what is clearly erroneous Of course you can, but what's the contrary testimony? Point to the contrary. There was no testimony to the contrary before the bankruptcy court. And so, you know, if you're weighing and balancing credibility, it's Mr. Telassa's on statements and the cross-examination of Mr. Telassa's on, and that's all the court is left with. Okay, will you reserve the rest? Would that Ms. Cohen? Thank you. May it please the court, your honors. Thank you for hearing us today. Leslie Cohen on behalf of the appellees. I won't recite all their names too long. Okay, so first, I do agree that there would have to be a determination that the findings of fact were clearly erroneous in order for this judgment to be overturned. And on top of that, many of those findings were based on both the statement of decision in the superior court and the bankruptcy court's determination that the debtor lacked credibility. And that can only be overturned if there's a finding of abuse of discretion. And there's nothing to indicate in the record or in the briefs for that matter, that there was any abuse of discretion by either court in determining that the debtor lacked credibility. On top of that, his argument seems to be that, well, I actually really intended to pay and I said that at some point. Even if that's credible, which has been found by two courts not to be, that's not enough to overcome under the case law of Bullock and Pemstein. It's insufficient to overcome the finding of defalcation. And here's why. As Judge Tai found, and as the statement of decision, I believe also found, the debtor had no basis for any kind of a good faith he would believe he was going to pay it back. And it's noteworthy that in making the arguments in the record and also in the brief, there's no reference to showing there was some money coming in that he could have relied on or some other source of funding. It was just him. So Tai got back to Bullock. What you're saying is there's a recklessness element here too, right? Exactly. Thank you. Exactly. It was at best reckless. I found the statement of decision interesting in that it seemed like they had all the elements for fraud right there, but they didn't actually make a determination of on the fraud claims or the intentional torts. Therefore the claim is dischargeable, fails for exactly that reason. And I think one of your honors pointed out already that it doesn't have to say fraud, that's not necessary, but everything that we have here is more than sufficient to show defalcation. I want to point to both the Bullock and the Pemstein cases, which were the findings at least were far less egregious than we have in our case. In Bullock, the trustee of the trust took money out and paid it all back with interest and was still found to be liable for defalcation because it was basically self-dealing. Even though there was a finding that he had no malicious intent and no scienter, it was still self-dealing far more mild than what we have here where we have findings by both courts of intentional conduct. Pemstein as well. In Pemstein, there was a finding that the debtor didn't account for the monies on hand or somehow didn't account for them, but there was no finding that he actually got the money and it was still found to be defalcation in a fiduciary capacity. Here there doesn't seem to be any debate about whether there was a trust and a fiduciary relationship. The question is whether the conduct has found, whether it should have been found, and I think since two courts found it and the only opposing testimony is the debtor's which was found not to be credible, we should have all the elements lined up and no finding of fraud was necessary. The argument was made just now that my clients did not testify in the bankruptcy court hearing. I'm not sure how that's relevant, but it was not raised in their brief and so that should be disregarded if relevant. And again, the debtor's good faith not only was disregarded, but it's just insufficient as a matter of law. With regard to the motion in limine that was denied to exclude the state court judgment, that seems to be an important part of the appellant's argument that the motion in limine should have been granted and the state court judgment should not have been allowed. That motion in limine was properly denied for two reasons. One, it was very late and two, once again, there was evidence lacking to support any reason not to allow the statement of decision to come in. Again, the only testimony that went the other way was the debtor's testimony and there was nothing to support that. Ultimately, this is sort of like one of the earlier ones today where this is sort of a third attempt to get out of something that's already been ruled on twice. And again, on the motion in limine, the standard to grant the appeal based on denial of the motion in limine would be an abuse of discretion. And there's nothing here to suggest that Judge Tai abused her discretion in denying the motion in limine. The appellant suggests that they can basically get off the hook here by saying after the fact, well, I intended to pay. And we've heard some of the argument on that. But ultimately, there's really been no case law offered separate apart from whether the debtor's testimony is credible or not, which was found by two courts not to be. There's no law cited in the record to support this concept that, well, they can just say they didn't mean it after the fact and therefore somehow it becomes dischargeable. There was reference to, in the brief, to the Bensey case, claiming that post Bullock, that the way the case law has developed, that somehow it's a different standard. But the Bensey case, not only is it not where the court found that the fiduciary relationship did not arise until after the fact. And that was why in Bensey, it was found to be in a, it was found not to be a defalcation in fiduciary capacity because the relationship did not exist until after the fact. So that case is irrelevant to our situation. And the closer cases are the Bullock and the and the Pemstein cases. Your Honor, the other thing about the motion in limine argument is that there's now a reference to Rule 60B, something suggesting that this Rule 60B, this was in the appellant's brief, that Rule 60B should be applied to somehow overturn the ruling on the motion in limine. I'm not quite sure why that's argued, but it was not argued in the court below. And again, should be disregarded. Moreover, the argument that the standards for setting aside a judgment for fraud under Rule 60B somehow apply, but there is no judgment, excuse me, there is no judgment for fraud. So that whole argument, we believe, should be rejected. I think the problem here, and the case law goes into it, so it is pretty clear. The problem with the appellant's position is they're kind of keep saying, well, gee, there was no finding of fraud against me, and therefore this is dischargeable. The case law is very clear that those are two separate things. They're different code sections. They're different standards. Defalcation requires the express trust relationship and then the breach of that. And one of the cases in Pemstein, the court cited to California Corporations Code, Section 16404C, which basically says a breach of fiduciary duty can only happen by doing the following kinds of misconduct. And that's the situation that we have here. We have a duty, we have that it was breached. With regard to the application of issue preclusion, I think everyone agreed that all the issues were identical, except as I think your honors and Mr. Aver pointed out, whether or not there was this intentional breach of the duty, whether there was sufficient findings. The duty and the other issues are not disputed. And again, it comes back to the same issue. The debtor says, well, gee, I said I didn't mean it. I said I intended to pay. And by the way, after the fact, they have a short declaration in the record that Mr. Lahegee, one of the witnesses said, well, I lied in my declaration. Someone made me do it. Those are things that I guess could have been brought up in the state court, should have been brought up, but they weren't. And again, given the credibility issues, the identity of issues and the lack of a requirement of showing of a finding of fraud, we believe that issue preclusion was appropriate. I would add, your honor, that the findings of misconduct were much more detailed in our case than in any of the cited cases, especially like Bullock and Penstein. There's a finding that the debtor failed to share the proceeds of sale, instead spending it on his and his wife's personal expenses, her bar dues, which was kind of ironic, and the kid's camp and things like that, that the debtor cut off access to the warehouse and documents to the appellees, that the debtor checks knowing they were NSF, that inventory under his control disappeared, that he made negligent misrepresentations and specific false statements. Again, that goes so much far beyond what was found to comprise defalcation in the Penstein and the Bullock cases. And again, your honor, to the extent that there's a reference, really all the appellant really seems to have is the witness's statement a couple of years later, that short declaration says, well, I kind of didn't tell the truth. And that's kind of like, well, were you lying now or are you, were you lying then or are you lying now? So that whole thing kind of calls his credibility into question. But also the fact that two courts already found the debtor's lack of credibility and the fact that that can only be overturned for abuse of discretion. We believe this should be a case for affirming the judgment below. And unless the court, your honors have questions, that's all for me. I do not. Judge Gann? I don't have any other questions. Thank you. Judge Spraker? No, thank you. Okay, thank you very much. Thank you. Okay. So let me just comment on a few things so I don't take up the court's valuable time. Ms. Cohen's correct. It appears from the statement of decision that all the elements of fraud were met. Yet the court's judgment was that there was no fraud. And that really goes to what I think here is the fundamental problem with the foundation of this building. This statement of decision is inconsistent and shouldn't be relied on. Secondly, there's really nothing in the statement of decision about the state of mind of the appellant. And everything that, again, going back to the trial transcript, it's there as to what his state of mind was. Yes, Ms. Cohen's correct. There's some payment of personal expenses. But those were rather de minimis. State bar dues are $400. And we're talking about hundreds of thousands of dollars in this case. The last thing that I would like to focus in on that I didn't do when I started out was with regard to the damages. And the appellees have the burden of proving that their damages were proximately caused by the alleged defalcation. And the bankruptcy court, in its findings, notes that, quote, because no audit of the entirety of the company's finances was presented by either side, there's no way to know if these amounts represent the profit that was not shared, the amount appellant took out of the profits for is under the agreements, the damages cannot be verified. Given that the burden of proof lies on the appellant, they have failed to meet their burden for this reason alone. The bankruptcy court, however, did acknowledge that the appellant's actions that may have caused damages an identified amount of the damages claimed by the appellant. These two findings on their own, an initial action and potential end result cannot be connected logically without more information. The bankruptcy court overlooked the state court's illogical connection between appellant's actions and damages claims. And appellees followed suit by declining to complete a logical progression of appellant's actions to appellee's damages. And therefore, if for no other reason, the issue of damages should be reversed and remanded. That's all I have to say unless your honors have questions for me. I do not. Judge Gant? I do not. Thank you. Judge Fraker? I do not. Okay, thank you for your excellent arguments both sides on this. We'll take the matter under submission and we will be getting out a written decision as soon as we can.
judges: LAFFERTY, SPRAKER, GAN